UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC LARSON,

        Plaintiff,

  v.                                        Case No. 10-C-446

WISCONSIN CENTRAL LTD.,

        Defendant.

## ORDER GRANTING MOTION IN LIMINE

       Plaintiff Eric Larson (Larson) filed suit against Defendant Wisconsin Central Ltd. (WCL) on May 24, 2010, alleging violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51et seq. The case is before me now on Defendant's motion *in limine*, seeking an order from the Court barring the deposition testimony of Dr. Richard Rider. (ECF No. 26.) WCL contends that Dr. Rider's testimony should be barred because his methodology does not meet the standard required under Fed. R. Evid. 702 and it fails to establish a sufficient link between the depression and the incident. For the reasons discussed below, the motion will be granted.

       Dr. Rider saw Larson only once on June 29, 2010, more than a year after the accident that is the subject of the action, as part of a narcotics evaluation to assess any risk of prescribing narcotic pain medication as treatment for his physical injuries. Following an interview and several written tests, Dr. Rider diagnosed Larson with "major depressive disorder, recurrent, currently moderate." (ECF No. 27, Ex. B.) Dr. Rider did not offer an opinion on the cause of Larson's depression either in his report or in his deposition. In fact, he testified at his deposition that he generally does not

even attempt to determine a cause. (*Id*., Ex. A., p. 28.) Later on in the deposition, however, Larson's attorney asked Dr. Rider the following question:

> Q. Doctor, in your professional opinion, Mr. Larson's chronic pain, disability, loss of job, lack of sleep, loss of ability to do things that gave him pleasure in life, has that contributed or played any part in your diagnosis of major depressive disorder?

(*Id*., Ex. A., p. 45.) Dr. Rider responded: "I would say yes." (*Id.*) There was no follow up question as to what part it played in the diagnosis.

The United States Supreme Court has emphasized that a district court must act as a gatekeeper in ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In assessing the reliability of an expert opinion, a court must consider factors such as "(1) whether the scientific theory can be or has been tested," "(2) whether the theory has been subjected to peer review and publication," and "(3) whether the theory has been generally accepted in the scientific community." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007); *Meyers v. Nat'l R.R. Passenger Corp.*, 648 F. Supp .2d 1032, 1042 (N.D. Ill. 2009). The Seventh Circuit has stated that the district court, in keeping with its gatekeeper's duty, must "assess the reliability of the *methodology* the expert has employed in arriving at his opinion." *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 535 (7th Cir. 2005) (emphasis in original). "This requires the court to consider whether the testimony has been subjected to the scientific method, ruling out any subjective belief or unsupported speculation." *Chapman v. Maytag Corp*., 297 F.3d 682, 687 (7th Cir. 2002); *see also Daubert*, 509 U.S. at 590; *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817–18 (7th Cir. 2010).

2

But *Daubert* applies differently to different types of expert witness testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("We agree with the Solicitor General that the factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.") (internal quotes omitted). "Genuine expertise may be based on experience or training," *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir. 1996), and thus it is not necessary in every case that each opinion be subjected to scientific tests and peer review. Although the fields of psychiatry and psychology pose unique difficulties under *Daubert*, it is well established that these fields provide a reliable body of specialized knowledge that is often relevant and helpful to the factfinder in resolving issues that commonly come before the courts. *United States v. Hall*, 93 F.3d 1337, 1343 (1996).

Here, there is no real dispute that Dr. Rider, a trained doctor of psychology, conducted the standard type of interview and utilized the kinds of written instruments that are commonly used in the field to evaluate a person's mental condition. WCL does not challenge Dr. Rider's qualifications as a psychologist. It appears instead that it is only a portion of Dr. Rider's testimony that WCL challenges. WCL challenges Dr. Rider's opinion that Larson's physical injuries that are allegedly the result of the railroad accident contributed to or played a part in his diagnosis of depression. WCL contends that this testimony fails to establish a sufficient link between the depression and the incident. I agree.

Larson suggests that the testimony he offers essentially tracks the language of FELA, which makes railroads liable for any injuries that result "in whole or part" from the railroad's negligence. 45 U.S.C. § 51. Just last term, the Supreme Court reaffirmed that a FELA claimant need not

3

establish that the injuries for which he seeks compensation were proximately caused by the negligence of his employer. *See CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 1244 (2011) ("Juries in such cases are properly instructed that a defendant railroad 'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury.'"). Given this broad standard of causality, Larson argues that Dr. Rider's testimony that his injuries "contributed or played a part" in his diagnosis of major depressive disorder should be admitted.

But to say Larson's physical injuries contributed or played a part in his diagnosis is not the same as saying that his injuries contributed to or played a part in causing his depression. There is no indication in the testimony as to what part the physical injuries played in the diagnosis. Even if I were to construe Dr. Rider's testimony as an opinion that the physical injuries Larson claims he sustained as a result of the railroad accident contributed to, or played a part in causing his depression, it would still be excluded. Larson has failed to lay any foundation for Dr. Rider offering such an opinion. To be sure, Dr. Larson appears qualified to describe, diagnose and treat depression, but there is nothing in the record that suggests he is qualified to offer an opinion on its cause. Dr. Rider denied that he generally even attempts to determine a cause. He noted that "[t]he DSM – IV [the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association] doesn't require an etiology, a cause, to be identified. So I really couldn't tell you, and the patient also might not be able to tell you, exactly what's causing the depression." (ECF No. 26, Ex. B, p. 26.) It thus appears that Dr. Rider lacks experience in determining the cause of depression, and nothing in the record suggests he has any training or education that would qualify

4

him as an expert on the issue.  Absent some foundation in the record to establish that Dr. Rider is qualified to render such an opinion, his testimony to that effect will be barred.

Accordingly, for the foregoing reasons, Defendant's motion to bar the testimony of Dr. Richard Rider, Docket 26, is **GRANTED**.

Dated this   30th    day of January, 2012.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge