UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC LARSON,

        Plaintiff,

v.                                                Case No. 10-C-446

WISCONSIN CENTRAL LTD,

        Defendant.

**ORDER SUPPLEMENTING RULINGS**

The parties have submitted various objections to questions asked in the course of videotaped depositions that they intend to offer as evidence during trial. The Court ruled on most of the objections in the course of a telephone hearing on February 1, 2012. The Court reserved ruling on several objections, however.

The first objection the Court reserved ruling on was the testimony of Dr. Max Ots. Plaintiff objected to a question asked by counsel for the railroad inquiring whether a plaintiff's desire to obtain disability benefits could be considered secondary gain in general. (Ots Dep. at 27, ll. 2–7.) Plaintiff objects, claiming that such a question is wholly inadmissible under *Eichel v. New York Cent. Railroad*, 375 U.S. 253 (1963). Based upon the Court's reading of *Eichel*, Plaintiff's argument appears sound. Although the collateral source rule generally only precludes reducing an award for damages by amounts the plaintiff recovers for the same losses from so-called collateral sources, *Eichel* held that benefits paid under the Railroad Retirement Act not only constitute a collateral source that cannot be used to reduce an award, they cannot even be mentioned in an effort to establish a plaintiff's motive to exaggerate the extent of his injury or disability. *Eichel,* 375 U.S.

at 255 ("[I]t would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937, 50 Stat. 309, as amended, 45 U.S.C. s 228b(a) 4, were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act."). Accordingly, the objection is sustained, and the question may be edited out of the deposition.

The remaining objections on which the Court reserved ruling were to questions asked during the deposition of lay witness Jon Gendron. (ECF No. 53, Ex. A., Gendron Dep. at 21, ll. 19–24; *id.* at 22, ll. 9–20.) The same testimony is also the subject of a separate motion in limine filed by WCL. Gendron was a supervisor of locomotive engineers for the railroad and visited the site shortly after the accident occurred. Gendron began his employment with the railroad as a conductor in March of 1996. In June of 1996, he was promoted to remote control operating engineer and in December became a yard engineer. In January of 1999 he became a full road engineer and then in 2003 he became a train master. In October of 2004, he assumed the position of supervisor of locomotive engineers for the territories including Green Bay, Wisconsin. Although Gendron studied auto mechanics, he did not get any certification as an auto mechanic. He never worked in the mechanical department of a railroad or had any railroad mechanical experience inspecting or repairing rail cars. He acknowledged during his deposition that he was not a mechanic. (ECF No. 53, Ex. A., Gendron Dep. at 24:9.) He did, however, work as an auto mechanic for some period of time.

Following the accident, Gendron appeared at the yard and was present during several attempts to reenact the events leading up tot he accident. Specifically, the engineer was asked to back up the train, using the same cars that had been attached at the time of Larson's accident, and

2

to move forward making a stop similar to the one that preceded the accident. Gendron testified that he observed from the outside of the train several of the efforts to reenact and noted that the boxcar in the chain of cars slammed forward in an unusual manner. He watched several re-enactments and each time the boxcar slammed forward in an unusual manner. After witnessing it from the outside, Gendron testified that he went in to the locomotive cab itself and observed the engineer start and stop the train. He testified that the engineer appeared to be operating the train properly and he heard a loud bang and felt an unusual impact at the time he stopped the train. Gendron was then asked the series of questions and gave the answers that are at issue:

> Q   Okay. Do you have any opinions or conclusions, based upon your own investigation of this matter, why there was a hard slack action in the train?
> A   I contributed [sic] it to a boxcar with a bad order draft gear.

(ECF No. 53, Ex. A., Gendron Dep. at 21:19-24.)

> Q   What was there about the boxcar that you understood made it a bad order draft gear?
> A   It was the way the boxcar responded to stopping that was actually the cause of the bang that we were hearing and feeling.
> Q   Did you understand the boxcar to have a what's known as a cushioned drawbar?
> A   Yes.
> Q   And when you watched the boxcar in the stopping process, did you conclude that the cushioned drawbar was not operating as intended?
> A   Correct.

(Id. at 22:9-20.)

WCL objects to this testimony on the ground that Gendron is not qualified to provide such expert testimony. In response, plaintiff argues that WCL waived the objection by failing to make it at the time of the deposition so that it could have laid a proper foundation. *See* Fed. R. Civ. P. 32(d)(3)(B) (objection not timely made at deposition is waived if it relates to matters that might

3

have been corrected at time). Plaintiff further alleges that the foundation is sufficient on the record as it stands and the testimony is admissible in any event.

The challenged testimony clearly constitutes expert testimony, the admissibility of which is governed by Fed. R. Evid. 702, since it is based upon specialized knowledge, i.e, whether a cushioning unit on a railroad boxcar is defective. Gendron does have experience as a locomotive engineer that would provide a basis for him to offer testimony as to what is normal movement for boxcars upon breaking and start-up, and WCL does not challenge his testimony that the boxcar slammed forward during the re-enactment in an unusual manner. It is his qualification to offer the opinion that the cushioning unit of the boxcar was defective that WCL challenges. I conclude that its challenge has merit.

As WCL notes, Gendron failed to even properly identify the component at issue. He concluded that the boxcar had a "bad order draft gear." But a draft gear is the mechanical shock absorber on a tank car. (ECF No. 53, Ex. B. Dep. of Brian White at 24.) A cushioning unit operates hydraulically, whereas a draft gear operates with springs and blocks. (*Id.*) Gendron's testimony that the boxcar had a bad draft gear makes no sense. It is true that after Plaintiff's counsel asked Gendron a leading question about the cushioned drawbar found on boxcars, he agreed that it, too, was not operating as intended. But agreeing with counsel's leading question hardly inspires confidence that the witness knows what he is talking about.

I conclude that WCL's motion should be granted. The fact that WCL failed to object at the time the question was asked at the deposition is immaterial since there is no reason to believe that a firmer foundation could have been laid. Gendron's expertise, if any, is as an operator of trains who knows how rail cars usually respond to breaking and start-up. However, there is no showing

4

that he has any expertise in determining whether the cushioning unit of a boxcar is or is not defective, or in ruling out other possible causes of unusual movement in rail cars. Accordingly, WCL's objection to his testimony is sustained and its motion in limine to exclude the above quoted questions and answers (ECF No. 53) is granted.

**SO ORDERED** this   2nd   day of February, 2012.

                                         s/ William C. Griesbach
                                        William C. Griesbach
                                        United States District Judge