UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC LARSON,

        Plaintiff,

v.                                          Case No. 10-C-446

WISCONSIN CENTRAL LTD.,

        Defendant.

**ORDER DENYING MOTION TO BAR
TESTIMONY OF MICHAEL J. O'BRIEN**

Plaintiff Eric Larson (Larson) filed suit against Defendant Wisconsin Central Ltd. (WCL) on May 24, 2010, alleging violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. The case is before me now on Defendant's motion *in limine*, seeking an order barring the testimony of Michael J. O'Brien, Plaintiff's liability expert. (ECF No. 28.) For the reasons discussed herein, Defendant's motion will be denied.

**BACKGROUND**

This case arises out of an accident that occurred on March 24, 2009 at WCL's Green Bay yard. Larson, a WCL conductor, and Robert Andrews, a WCL engineer, were assigned to switch out a train that had arrived earlier in the day by placing the cars comprising the train on different tracks in the yard based upon the cars' ultimate destination.

At the time of the accident, Andrews was in the locomotive which was pulling five cars to the south down the lead track. Plaintiff was riding on the side of the rear end of the last car. Plaintiff's plan was to have Andrews pull south until the rear car was past the switch for Track No. 12 and then stop. Plaintiff was then going to operate the switch so that the rear car could be put in on Track No. 12. As conductor in charge of the work, Larson gave commands to Andrews via radio.

According to Larson, as Andrews began to stop, there was an excessively hard "run-in" of the "slack" of the drawbars of the cars. He says he was then thrown against the grab bar on the side of the car he was riding, resulting in the alleged injuries. Larson claims that the excessively hard run-in was caused by an inoperative cushioning unit on one end (the "A" end) of one of the cars on the train (CNA 409149), a boxcar.

After Larson was taken to the hospital, a re-enactment of the accident was performed. Andrews and another conductor reassembled the train, and Andrews pulled the train down the lead track toward the switch for track No. 12, attempting to replicate his operation of the locomotive. Several persons were present during the re-enactment. Each has been deposed, as has Andrews.

Later that evening, Darnell Stitts, WCL's mechanical supervisor and an experienced car mechanic, inspected the cushioning unit on CNA 409149. Stitts found no defect in the cushioning unit and concluded the unit was working properly. Over the next four days, two other experienced mechanics, Bryan White and Ken Uhl, inspected the cushioning unit. Neither of them found any defect in the cushioning unit. WCL's expert William Stoltenberg inspected and tested the cushioning unit on November 13, 2011. Stoltenberg found no defect and concluded the unit was operable.

**ANALYSIS**

**1. Initial Report**

Whether or not the opinion of an expert is admissible is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto, in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party who proffers an expert's testimony bears the burden of establishing its admissibility under Rule 702. *Lewis v. CITGP Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009); *Fail Safe, LLC v. A.O. Smith Corp.*, 2010 WL 5495017 at *12 (E.D. Wis. 2010). The report of the expert — required by Fed. R. Civ. P. 26(a)(2)(B) — must be sufficiently thorough and complete to show the expert satisfies the requirements of Rule 702. *Salgado v. General Motors Corp.*, 150 F.3d 735, 742, n.6 (7th Cir. 1998).

In order for an expert's testimony to be admissible under Rule 702, the expert must have sufficient training, knowledge, skill, or experience so as to qualify him or her to give the proffered opinions. *O'Connor v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105–07 (7th Cir. 1994). Additionally, the Court, acting as "gatekeeper" must determine that the proposed testimony meets the reliability requirements set out by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (now codified in Rule 702). Specifically, the Court must conduct a two-step analysis: first, it must determine if the expert's testimony "is based on a reliable methodology;" and second, the Court must determine if the testimony "assists the trier of

fact in understanding the evidence or in determining a fact in issue." *Clark v. Takata Corp.*, 192 F.3d 750, 757–58 (7th Cir. 1999). *See also Chapman v. Maytag Corp.*, 297 F.3d 682, 686–87 (7th Cir. 2002).

Plaintiff has disclosed a single liability expert, Michael J. O'Brien, who worked for the Federal Railroad Administration (FRA) for 25 years, first as a Motive Power & Equipment (MP&E) Safety Inspector and later as a regional MP&E Safety Specialist. O'Brien left the FRA in 2004 and now has a forensic consulting practice. In the report that plaintiff produced with his initial disclosures on September 14, 2011 (Ex. A), O'Brien identified eight opinions which he planned on offering at trial. According to WCL, the Court need only consider the admissibility of one of those opinions: No. 2 (on page 21 of the report) which reads:

> The materials provided for my review related numerous first-hand accounts of the excessive slack action encountered by Mr. Larson. They were provided by representatives of both rail management and rail labor and referenced what they saw and felt at the time of the accident and during reenactments. It is clear from these descriptions of the unusually severe slack action of CNA 409149 that the end of the car cushioning device was inoperative. In the absence of any apparent defect, end of car cushions are deemed to be non-complying if they are inoperative and not performing their intended function of absorbing shocks and impacts. Per the Railroad Freight Car Safety Standards, 49 C.F.R. § 215.127(c), a railroad may not place or continue a car in service with an inoperative end of car cushioning unit.

(ECF No. 30, Ex. A., O'Brien Rep. at 21.) According to WCL, the other seven opinions have nothing to do with plaintiff's claim concerning the cushioning unit. (ECF No. 46 at 4.)

In order to reach his opinion, O'Brien reviewed a number of depositions and documents produced in discovery. (ECF No. 46, Ex. A, at 2–3.) However, he did not inspect CNA 409149 or its cushioning unit, even though at the time he prepared his report, the car could have and would have been made available for his inspection had he so requested. (ECF No. 46, Ex.C, at 34–35.)

According to WCL, this failure is significant. WCL notes O'Brien stated he used the same methodology that he employed when he investigated accidents at the FRA: "I continue to rely upon and follow the same essential and time-proven procedures I employed while working for the FRA." (*Id.* at 7.) But WCL contends this is not true because, when O'Brien was at the FRA and was asked to investigate an accident involving a car or other piece of equipment, he always inspected and tested the piece of equipment for defects. (*Id.*) ( "I was also involved [at the FRA] in investigations when equipment defects were suspected as causal or contributing factors in an accident or incident. I performed the necessary tests and inspections to make such determinations and submitted my findings to the FRA."). Thus, contrary to his claim, WCL asserts, O'Brien did not employ "the same essential and time-proven procedures" that he used at the FRA. Instead, according to WCL, O'Brien merely reviewed the deposition testimony of various witnesses by making credibility judgments and determining what he believed the weight of that testimony showed as to whether the cushioning unit was inoperable. Specifically, he initially discounted the testimony of WCL's mechanical supervisor, Darnell Stitts, and the other qualified car mechanics who inspected the cushioning unit and found no defects.

The fact that O'Brien did not inspect the actual cushioning unit goes to the weight of his testimony, not to its admissibility. However, to the extent O'Brien's opinion that the cushioning unit was defective is based on the disputed testimony and reports of others, it is barred. The role of an expert is not to tell the jury who to believe about a disputed issue of fact. But this does not mean that O'Brien may not offer testimony about the purpose and function of the cushioning unit. If, for example, he simply testifies about how a cushioning unit functions and what its purpose is, a jury may find such testimony helpful in determining whether the unit at issue here was defective.

5

As the Advisory Committee Notes to Fed. R. Evid. 702 make clear, experts need not testify only in the form of opinions. An expert "may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." It appears that O'Brien may have disclosed sufficient information in his report to allow such testimony at trial. And certainly, his criticism of the analysis and testing of WCL's employees and expert would also be admissible. Accordingly, to the extent WCL's motion seeks to bar O'Brien from testifying at all, it is denied. The exact parameters of his testimony cannot be determined at this time on the record as it now stands and must await trial.

**2. Rebuttal Report**

WCL also argues O'Brien's proposed "rebuttal" testimony should be barred. First, WCL argues that O'Brien's report was not timely. In its Scheduling Order, the Court made no provision for serving rebuttal reports. While that did not preclude plaintiff from serving a rebuttal report, it did mean he was required to comply with the default deadline provision in Rule 26(a)(2)(C)(ii) of the Federal Rules of Civil Procedure, which requires that a plaintiff serve any rebuttal report no later than thirty days after the defendant discloses its experts. Here, WCL served its liability expert disclosures on November 16, 2011. (*See* ECF No. 46, Ex. E.) Plaintiff did not serve O'Brien's "rebuttal" report until December 22, 2011. O'Brien's "rebuttal" report was, thus, untimely, and according to WCL his proposed "rebuttal" testimony should be excluded. *See Sams Hotel Group, LLC v. Environs, Inc.*, 2011 WL 2650565 at *1 (S.D. Ind. 2011) (plaintiff's proposed rebuttal expert testimony barred because plaintiff failed to serve rebuttal report within thirty days as required by Rule 26(a)(2)(C)(ii)).

6

WCL also contends one of the opinions, Opinion No. 1, in O'Brien's rebuttal report is not at all rebuttal. A rebuttal report "should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party.'" *Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) (quoting Rule 26(a)(2)(C)). It cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions. *See Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments"). According to WCL, Opinion No. 1 in the O'Brien rebuttal advances a new argument.

WCL also seeks the exclusion of the other four opinions proffered in the rebuttal. Those opinions simply are criticisms of WCL's expert Stoltenberg because O'Brien believes Stoltenberg did not give proper weight to testimony which O'Brien found convincing and because Stoltenberg did not videotape his inspection of the cushioning unit on CNA 409149. According to WCL, they may be matters that plaintiff's counsel can address in cross-examination of Stoltenberg and in closing argument, but they certainly are not matters as to which the jury needs O'Brien's assistance in deciding what weight to give to Stoltenberg's testimony.

Although O'Brien's report was five or six days late, excluding the opinions expressed therein, absent a showing of prejudice, is too drastic a remedy. Criticism of WCL's expert is appropriate rebuttal, and much of the criticism appears in the original report. Moreover, to the extent O'Brien merely supplemented his opinions based on additional material he was provided after he submitted his initial report, exclusion would not be warranted. However, just as O'Brien may not tell the jury who to believe on disputed issues of fact, he may not offer an opinion that

WCL's expert erred in failing to credit their testimony. Here, too, the exact parameters of admissible testimony cannot be determined at this time and must await trial.

**SO ORDERED** this   3rd   day of February, 2012.

                                             s/ William C. Griesbach
                                             William C. Griesbach
                                             United States District Judge